**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SETH G.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 2:25-cv-00992** |
| | : | **Judge Algenon L. Marbley** |
| | : | **Magistrate Judge S. Courter M. Shimeall** |
| **COMMISSIONER OF SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

**REPORT AND RECOMMENDATION**

Plaintiff, Seth G., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors. (ECF No. 10.) The Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for SSI on June 8, 2023, alleging disability as of June 1, 2018, due to arthritis, ADHD, personality disorder, autism, diabetes, depression, anxiety, and seizures. (ECF No. 7-3, PAGEID #: 130; 7-5, PAGEID ##: 292–97, 329.)[1] Plaintiff's application was denied

[1] Plaintiff previously applied for SSI on February 25, 2021, which was denied by administrative decision on October 5, 2022. (ECF No. 7-3, PAGEID ##: 101−22). The Appeals Council declined jurisdiction on May 4, 2023. (*Id.* at PageID ##: 123−29.)

initially on August 14 , 2023, and upon reconsideration on November 13, 2023. (ECF No. 7-3, PAGEID ##: 130, 151.) Thereafter, Plaintiff appeared telephonically, with counsel, before an administrative law judge ("ALJ") on July 1, 2024. (ECF No. 7–2, PAGEID ##: 70–99.) On July 19, 2024, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PAGEID ##: 31–51.)

The ALJ applied the five-step sequential process to evaluate Plaintiff's SSI application. [2] (*Id.* at PAGEID ##: 35−36.)

- Step One: The ALJ found that Plaintiff had not engaged in substantial gainful activity since June 8, 2023, the application date. (*Id.* at PAGEID #: 36.)
- Step Two: The ALJ found that Plaintiff had the following severe impairments: post-traumatic stress syndrome (PTSD); major depressive disorder; anxiety/panic disorder; autism spectrum disorder; somatic symptom disorder; obesity; hypogonadism; chronic obstructive pulmonary disease (COPD); decreased attentiveness spells; diabetes mellitus, type II; Pens Planus bilaterally. (*Id.*)
- Step Three: The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at PAGEID #: 37.)

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009).

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except [Plaintiff] can never climb ladders, ropes, or scaffolds. He cannot have concentrated exposure to extreme heat, atmospheric conditions (as defined in the Selected Characteristics of Occupations, SCO). He cannot have exposure to unprotected heights, moving mechanical parts, or perform commercial driving. [Plaintiff] can carry out simple tasks but cannot perform work that requires satisfaction of production quotas or that involves assembly line pace. He can have occasional interaction with coworkers, supervisors, but no interaction with the general public. Additionally, [Plaintiff] can make simple decisions and deal with occasional changes in a routine work setting explained in advance. He cannot perform tandem work or managerial duties.

(*Id.* at PAGEID #: 38.)

- <u>Step Four</u>: The ALJ determined that Plaintiff had no past relevant work. (*Id.* at PAGEID #: 43.)
- <u>Step Five</u>: The ALJ concluded that—when considering Plaintiff's age, education, work experience, RFC, and in reliance on the Vocational Expert's testimony—there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as a garment sorter, inspector and nut and bolt assembler. (*Id.* at PAGEID ##: 43–44.)

The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since June 8, 2023. (*Id.* at PAGEID #: 44.) The Appeals Council denied Plaintiff's request for review on July 2, 2025. (*Id.* at PAGEID ##: 25–30.) This appeal followed.

## II. RELEVANT RECORD EVIDENCE

The Undersigned has reviewed the portions of the administrative record relevant to the claimed errors raised by Plaintiff. Rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices the claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

In his Statement of Errors, Plaintiff contends that the ALJ failed to properly evaluate the supportability and consistency factors when discussing the medical opinion of Nurse Practitioner Shannon Scott, PMHNP. (ECF No. 10, PAGEID ##: 1033−37.) The Commissioner counters that, contrary to Plaintiff's argument, the ALJ "properly discounted the extreme opinions" of Ms. Scott given Plaintiff's consistently unremarkable mental health findings on examination and conservative mental health treatment. (ECF No. 11, PAGEID ##: 1947−51.)

An ALJ's RFC determination must be "based on all of the relevant medical and other evidence" in a claimant's case record. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) Supportability; (2) Consistency;

(3) Relationship with the Claimant; (4) Specialization; and (5) Other Factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* And even though an ALJ may discuss how they evaluated the other factors, they are not generally required to do so. *Id.*

When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2).

Finally, "[a]lthough the ALJ is not required to use the 'magic words' of 'supportability' and 'consistency' when describing their reasoning, the ALJ must still provide sufficient reasoning, scaffolded with references in the medical record to support their decision, enough for a subsequent reviewer to trace the lines of their reasoning." *Mertle v. Comm'r of Soc. Sec.*, No. 3:24-CV-00832-JJH, 2024 WL 5160189 (N.D. Ohio Dec. 19, 2024).

At base, an ALJ must "provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted*, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). This analysis does "not

require those explanations to contain a specific level of detail, but instead contemplate that the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (internal quotations omitted). However, "it is the obligation of the ALJ 'in the first instance to show his or her work, *i.e.*, to explain in detail *how the factors actually were applied* in each case, to each medical source.'" *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-cv-129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021)).

Here, Plaintiff challenges the ALJ's weighing of Ms. Scott's opinion under both the supportability and consistency factors. But when read as a whole, the Undersigned finds that the ALJ's opinion sufficiently addressed both of the required factors with respect to Ms. Scott's opinion.

The ALJ addressed and referenced Ms. Scott's opinion throughout his analysis of Plaintiff's mental limitations as follows:

> Mentally, despite his complaints, objective examination findings have frequently showed no significant abnormality, including being cooperative, despite his allegations of social anxiety. Mental status exams show full orientation; appropriate affect; appropriate insight/judgment, logical thought process, normal cognition, average intelligence, and a euthymic mood (Exs. 8F- 68, 82-83; 10F-4-5, 10-12, 23-25; 13F-6-7; 14F-8). The undersigned notes that some examinations show depression, anxiety, etc.; however, many show no or little abnormality. The representative relies heavily on the treating source statement discussed below; however, the ones that reflect debilitating impairment contain little supporting rationale and are generally not supported by the conservative nature of treatment or the objective findings in evidence, as discussed below. The claimant's allegations are not consistent with his regular, but generally conservative, treatment, with no significant hospitalizations. As noted above, physical/mental examinations, although noting some abnormality, has regularly revealed normal or near normal

> findings.
>
> *        *        *
>
> In finding the psychological DDS findings partially persuasive, the undersigned notes that they are not supported by significant rationale, as they adopt the prior ALJ findings. And although language used in the prior administrative medical findings – such as "superficial interaction" – is not vocationally defined, and thus, does not adequately articulate the limitation for use in a residual functional capacity, the undersigned finds the opinion partially persuasive to the extent it indicates only moderate psychological limitation. This conclusion is consistent with the overall record, including objective examination findings that frequently showed no abnormality, including being cooperative, despite his allegations of social anxiety; orientation; appropriate affect; appropriate insight/judgment, logical thought process, normal cognition, average intelligence, and euthymic mood (Ex. C8F/68, 82-83; C10F/4-5, 10-12, 23-25; C13F/6-7; C14F/8).
>
> *        *        *
>
> A certified nurse practitioner also found marked mental limitations, indicating that his high anxiety affects his social situations. (Ex. 22F). This was the same nurse practitioner from the opinions at Exhibits 2F and 19F, also finding marked mental limitations. The marked mental limitations are inconsistent with the claimant's longitudinal mental health record, showing less psychological restrictions, given his conservative treatment, no inpatient psychiatric hospitalizations, and no suicidal/homicidal ideation. Further, the severity of the limitations, being marked, including in social interaction, is inconsistent with the claimant's activities, which include being able to go grocery shopping and to the public library on a regular basis (monthly and weekly).

ECF No. 7-2, PAGEID ##: 41–43) (citing to Ms. Scott's opinions at C10F, ECF No. 7-9, PAGEID ##: 1081–82, 1087–89, 1100–02; 2F, ECF No. 7-7, PAGEID ##: 403–14; and 19F, ECF No. 7-12, PAGEID ##: 1860–64.)

First, the Undersigned finds that the ALJ's supportability analysis of Ms. Scott's opinion was sufficient. Plaintiff's contention that the ALJ did not engage in any supportability analysis of Ms. Scott's opinion is not well taken. True, the ALJ does not explicitly mention Ms. Scott by

name. But the evidence cited and the findings described make clear that the ALJ is referring to Ms. Scott's treatment notes and opinion when comparing relatively normal, objective findings to her more extreme limitations. Specifically, the ALJ noted with respect to Plaintiff's mental health that "objective examination findings have frequently showed no significant abnormality, including being cooperative, despite his allegations of social anxiety" and that Plaintiff's "[m]ental status exams show full orientation; appropriate affect; appropriate insight/judgment, logical thought process, normal cognition, average intelligence, and a euthymic mood." (ECF No. 7-2, PAGEID #: 41.) The ALJ further acknowledged that although some records show depressive or anxious symptoms, "many show[ed] no or little abnormality." (*Id.*)

In discussing those objective findings and treatment notes, the ALJ cited to Exhibit 10F, which are treatment notes from Ms. Scott, including where she noted that Plaintiff had a cooperative attitude, euthymic or anxious/depressed mood, clear speech, logical thought process, and documented other related categories as "WNL" (i.e., within normal limits). (Exhibit 10F, ECF No. 7-9, PAGEID ##: 1081–82, 1087–89, 1100–02.) Thus, the Undersigned finds that the ALJ did sufficiently analyze the supportability of Ms. Scott's opinion because he compared the relatively normal, objective findings in Ms. Scott's treatment notes with her more extreme, opined limitations as a reason for rejecting them. *See Justin R. v. Comm'r of Soc. Sec. Admin.*, No. 1:24-CV-00317, 2025 WL 2462736, at *6 (S.D. Ohio Aug. 27, 2025), *report and recommendation adopted*, No. 1:24-CV-317, 2025 WL 2725928 (S.D. Ohio Sept. 25, 2025) (holding that an ALJ's narrative discussion comparing a medical practitioner's opinions to multiple treatment records was sufficient to address the supportability factor); *see also Molly H. v. Comm'r of Soc. Sec.*, 2025 WL

2630681, at *17–18 (S.D. Ohio Sept. 12, 2025) (finding that "an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions.") Moreover, the Undersigned further finds that the ALJ's rejection of Ms. Scott's opinions as unsupported was not an error. The Sixth Circuit has found that extreme limitations not supported by office treatment notes are appropriately rejected. *See Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *3 (6th Cir. Sept. 28, 2023) (finding that the ALJ properly discredited a medical opinion and certain limitations that were not supported by treatment notes).

To the extent Plaintiff attempts to argue that Ms. Scott's opinion should have been given more weight or discussion because of the length of their treating relationship, such argument lacks merit. Under 20 C.F.R. § 404.1520c(b)(2), "ALJs '***may, but are not required to,*** explain how [they] considered' the remaining factors such as the length and frequency of treatment." *Sittinger v. Comm'r of Soc. Sec.*, No. 1:22-CV-01927-BYP, 2023 WL 6219412, at *17 (N.D. Ohio Sept. 7, 2023), *report and recommendation adopted*, 2023 WL 6214530 (N.D. Ohio Sept. 25, 2023) (emphasis in original) (citations omitted). Indeed, courts have repeatedly held that there is not a specific amount of detail required by the ALJ when evaluating a medical opinion. *See Justin R.*, 2025 WL 2462736, at *5 ("No 'specific level of detail' is required, as 'the appropriate level of articulation will necessarily depend on the unique circumstances of each claim.'" (citing *Timothy B.*, 2023 WL 3764304, at *7 (internal citations omitted)).

Next, the Undersigned rejects Plaintiff's contention that the ALJ erred by rejecting Ms. Scott's use of check-box forms. Although it appears that Ms. Scott did use check-box forms when opining about marked limitations, the ALJ did not discredit Ms. Scott's opinion because she used

that format.[3] (*See* ECF No. 7-2, PAGEID # 43.) But in any event, an ALJ may appropriately discount the use of a check-box form when it contains very little supporting explanation. *See Timothy B.*, 2023 WL 3764304, at *7 ("A check-the-box opinion with 'very little explanation or rationale' is not supported." (citation omitted)). Here, Plaintiff relies on Ms. Scott's check-box form opinions, contending that they were supported because Ms. Scott identified diagnoses to support the marked limitations. (ECF No. 10, PAGEID #: 1944, citing ECF No. 7-7, at PAGEID #: 405.) But diagnosis does not dictate a finding of disability. *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) ("[M]ere diagnosis . . . says nothing about the severity of the condition." (quoting *Higgs v. Sec'y*, 880 F.2d 860, 863 (6th Cir. 1988)).

Accordingly, the Undersigned finds that the ALJ appropriately discussed the supportability of Ms. Scott's opinion.

Second, Plaintiff's contention that the ALJ failed to properly explain why Ms. Scott's opinion was inconsistent with the longitudinal record is not well taken. The Undersigned construes this as a challenge to the consistency factor. Upon review, the ALJ did sufficiently address why Ms. Scott's opinion was not consistent with the overall record. Specifically, the ALJ compared Ms. Scott's opinion to other medical opinion evidence, opining that "objective examination findings have frequently showed no significant abnormality, including being cooperative, despite

---

[3] The ALJ did discredit nurse practitioner Gretchen S. Rossiter's opinion as well as physician assistant K. Davis's opinion, in part because of their use of check-box forms, but Plaintiff only challenges the ALJ's consideration of Ms. Scott's opinion in his Statement of Errors. (*See* ECF No. 7-2, PAGEID #: 43.) If Plaintiff were attempting to raise a separate challenge regarding the ALJ's considerations of Ms. Davis's or Ms. Rossiter's opinions, such an argument has not been sufficiently developed, and is therefore waived. *See e.g. Julie W. v. Comm'r of Soc. Sec.*, No. 1:21-CV-185, 2022 WL 3334244, at *6 (S.D. Ohio Aug. 12, 2022), *report and recommendation adopted*, 2022 WL 16533871 (S.D. Ohio Oct. 28, 2022) (finding a plaintiff waived her argument when she failed to legally or factually develop it in her statement of errors).

his allegations of social anxiety. Mental status exams show full orientation; appropriate affect; appropriate insight/judgment, logical thought process, normal cognition, average intelligence, and a euthymic mood." (ECF No. 7-2, PAGEID ##: 41–43.) The ALJ also relied on Plaintiff's activities of daily living (such as his ability to go grocery shopping and to the public library on a regular basis) and his overall generally conservative treatment history to conclude that Ms. Scott's opinion was not consistent with the overall record.

Moreover, although Plaintiff challenges the ALJ's consideration of his conservative treatment as improper, such a consideration is appropriate in this context. *See O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 417 (6th Cir. 2020) ("[W]e have often concluded that ALJs properly discounted the opinions of treating physicians where the opinions were incompatible with the claimant's generally conservative course of treatment or activities of daily living."); *see also Crum v. Comm'r Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (finding sufficient the ALJ's rejection of a medical opinion when the reasons for why it was inconsistent with "past treatment records" were listed elsewhere in the opinion).

Ultimately, the Undersigned finds that when read as a whole, the ALJ's opinion sufficiently addressed the supportability and consistency of Ms. Scott's opinion. *See Elizabeth A. v. Comm'r of Soc. Sec. Admin.*, No. 2:22-CV-02313, 2023 WL 5924414, at *5 (S.D. Ohio Sept. 12, 2023) ("[T]he ALJ's failure to provide detailed analysis [at one stage of his decision] is not a basis for relief if the ALJ 'made sufficient factual findings elsewhere in his decision . . . ' There is 'no need to require the ALJ to spell out every fact a second time.'" (quoting *Garza v. Comm'r of Soc. Sec.*, No. 1:14-CV-1150, 2015 WL 8922011, at *4 (W.D. Mich. Nov. 25, 2015) (further citations

omitted)). Finally, even if "Plaintiff would have preferred more discussion" regarding Ms. Scott's opinion, "a reviewing court must uphold an agency's decision even if it is of 'less than ideal clarity,' so long as the reasoning is reasonably discernible." *Kayla Ann H. v. Comm'r of Soc. Sec.*, No. 2:23-CV-2944, 2024 WL 3647758, at *4 (S.D. Ohio Aug. 5, 2024) (quoting *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021)). Here, because the ALJ's reasoning for rejecting Ms. Scott's opinion is reasonably discernable, the Undersigned finds no error.

## V. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED,** and that the Commissioner's decision be **AFFIRMED.**

## VI. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex*

*Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**